No. 23-3546

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

JUDICIAL WATCH, INC.,

*Plaintiff-Appellant*,

v.

SHIRLEY WEBER,
in her official capacity as
Secretary of State of the State of California,

*Defendant-Appellee*.

_____

Appeal from the United States District Court Central District of California
Case Number: 2:22-cv-06894
The Honorable Maame Ewusi-Mensah Frimpong

_____

## APPELLANT'S EXCERPTS OF RECORD

_____

KATHRYN BLANKENBERG
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Telephone: (202) 646-5172
Email: kblankenberg@judicialwatch.org

March 6, 2024

*Counsel for Appellant*
JUDICIAL WATCH, INC.

**ER 1**

## INDEX OF APPELLANTS' EXCERPTS OF RECORD

| ECF No. | Date Entered on Docket | Title | Page Nos. |
|---------|------------------------|-------|-----------|
| ECF-34 | February 2, 2024 | Judgment | ER 3 |
| ECF-29 | August 25, 2023 | Order Granting Stipulation for Entry of Judgment | ER 4 – ER5 |
| ECF-28 | August 17, 2023 | Stipulated Request for Entry of Judgment | ER 6 – ER 8 |
| ECF-27 | June 8, 2023 | Reporter's Transcript of Hearing on Defendant's Motion to Dismiss | ER 9 – ER 30 |
| ECF-26 | May 22, 2023 | Order Granting Motion to Dismiss | ER 31 – ER 46 |
| ECF-1 | September 23, 2022 | Plaintiff's Complaint | ER 47 – ER 55 |
| ECF-30 | November 13, 2023 | Notice of Appeal | ER 56 – ER 60 |
| | | Civil Docket Report | ER 61 – ER 64 |

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| *Plaintiff* | ) |
| v. | ) |
| SHIRLEY WEBER, in her official capacity | ) |
| *Defendant* | ) |

Civil Action No.  2:22-cv-6894-MEMF-JC

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

☑  other:  Secretary Weber's motion to dismiss is GRANTED as to all claims. Judicial Watch's Complaint is dismissed without leave to amend pursuant to Rule 12(b)(6). Both the First and Second Requests for judicial notice are GRANTED.

This action was *(check one)*:

☐  tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐  tried by Judge _____ without a jury and the above decision was reached.

☑  decided by Judge  Maame Ewusi-Mensah Frimpong  on a motion for

Motion to Dismiss (ECF No. 14) and two Requests for Judicial Notice (ECF Nos. 14-2 and 20-2).

Date:  February 2, 2024

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

**ER 3**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>    Plaintiff,<br>  v.<br><br>SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California,<br><br>    Defendant. | Case No.  2:22-cv-6894 MEMF(JCx)<br><br>**ORDER GRANTING STIPULATION FOR ENTRY OF JUDGMENT** |

**ORDER**

On August 17, 2023, Plaintiff Judicial Watch, Inc., and Defendant Shirley Weber, in her official capacity as Secretary of State of the State of California, filed a Stipulated Request for Entry of Judgment. ECF No. 28 ("Stipulation")

The stipulation requests that the Court enter judgment set forth in in a separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure following its order dated May 22, 2023 (ECF No. 26) granting the Secretary's Motion to Dismiss and dismissing all claims without leave to amend.

The Court, having considered the Stipulated Request for Entry of Judgment and finding good cause therefor, hereby GRANTS the stipulation and ORDERS the clerk to enter its judgment in this matter.

IT IS SO ORDERED.

DATED: August 25, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

ROBERT PATRICK STICHT (SBN 138586)
KATHRYN BLANKENBERG (SBN 335563)
MICHAEL BEKESHA (Pro Hac Vice)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org
Email: kblankenberg@judicialwatch.org
Email: mbekesha@judicialwatch.org

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., | Case No.  2:22-cv-6894 MEMF(JCx) |
| Plaintiff, | |
| v. | **STIPULATED REQUEST FOR ENTRY OF JUDGMENT** |
| SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, | |
| Defendant. | |

Plaintiff JUDICIAL WATCH, INC. and Defendant SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California ("Parties"), hereby stipulate to request entry of judgment by the Court in accordance with Rule 58(d) of the Federal Rules of Civil Procedure.

**ER 6**

1    WHEREAS, on May 22, 2023, the Court filed its Order Granting Defendant's

2 Motion to Dismiss (Dkt. 26) Plaintiff's Complaint as to all claims and without leave

3 to amend pursuant to 12(b)(6) of the Federal Rules of Civil Procedure; and

4    WHEREAS, the clerk has not yet entered a judgment in a separate document

5 pursuant to Rules 58(a) and 58(b)(1)(C) of the Federal Rules of Civil Procedure; and

6    WHEREAS, Plaintiff intends to appeal;

7    THEREFORE, it is stipulated by the Parties that the Court may enter its

8 judgment in this matter in a separate document.  A proposed form of judgment is

9 attached.

10

11                             Respectfully submitted,

12 DATED:  August 17, 2023                  JUDICIAL WATCH, INC.

13                        By:    */s/ Robert Patrick Sticht.*
14                               ROBERT PATRICK STICHT

15                        By:    */s/ Kathryn Blankenberg*
16                               KATHRYN BLANKENBERG
17                               Attorneys for Plaintiff

18 DATED:  August 17, 2023            ROB BONTA
19                               Attorney General of California
                                     PAUL STEIN
20                               Supervising Deputy Attorney General

21                               */s/ Anna Ferrari*
22                               ANNA FERRARI
23                               Deputy Attorney General
                                     Attorneys for Defendant
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-FILING ATTESTATION**

I attest that all other signatories listed on this document, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By:    */s/ Robert Patrick Sticht.*
        ROBERT PATRICK STICHT

1

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3        HONORABLE MAAME E. FRIMPONG, U.S. DISTRICT JUDGE

 4

 5   JUDICIAL WATCH, INC.,              )
                                        )
 6                  Plaintiff,          ) CASE NO.
                                        ) 22-CV-6894
 7         vs.                          )
                                        )
 8   SHIRLEY WEBER, in her official     )
     capacity as Secretary of State of )
 9   the State of California,           )
                                        )
10                  Defendant.          )
     _____)
11

12

13

14
                REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                    THURSDAY, MAY 11, 2023
16
                         9:11 A.M.
17
                   LOS ANGELES, CALIFORNIA
18

19

20

21

22
        _____
23
             MAREA WOOLRICH, CSR 12698, CCRR
24          FEDERAL OFFICIAL COURT REPORTER
           350 WEST FIRST STREET, SUITE 4311
25          LOS ANGELES, CALIFORNIA 90012
               mareawoolrich@aol.com
```

2

1              **APPEARANCES OF COUNSEL:**

2

3   **FOR PLAINTIFF:**

4       JUDICIAL WATCH
        By:  Robert Sticht, Attorney at Law
5       -and- Kathryn Blankenberg, Attorney at Law
        -and- Michael Bekesha, Attorney at Law
6       425 Third Street SW, Suite 800
        Washington, DC 20024
7

8   **FOR DEFENDANT:**

9       ROB BONTA
        Attorney General of California
10      By:  Anna Ferrari, Deputy Attorney General
        455 Golden Gate Avenue, Suite 11000
11      San Francisco, CA 94102

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**            **ER 10**

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, MAY 11, 2023

 2                           9:11 A.M.

 3                            -oOo-

 4

 5

 6              THE COURTROOM DEPUTY:  Calling Item No. 1, LA Civil

 7    Case 22-6894-MEMF, Judicial Watch Incorporated versus Shirley

 8    Weber.

 9              Counsel, please step forward and state your

10    appearances.

11              MR. STICHT:  Good morning, Your Honor.  My name is

12    Robert Sticht.  I'm here on behalf of Judicial Watch, the

13    plaintiff.  With me today is Katie Blankenberg who is also a

14    member of this court and a member of the State Bar of

15    California.  Also with us is Michael Bekesha.  Michael Bekesha

16    is part of our firm Judicial Watch.  You've allowed him to

17    appear pro hac vice.  He will be giving oral argument today.

18              THE COURT:  Good morning.

19              MS. FERRARI:  Good morning, Your Honor.

20    Deputy Attorney General Anna Ferrari for Secretary of State

21    Shirley Weber.

22              THE COURT:  Good morning.

23              Okay.  So I trust the parties received the Court's

24    tentative ruling late yesterday evening?

25              MR. BEKESHA:  Yes.
```

(12 of 64), Page 12 of 64    Case: 23-3546, 03/06/2024, DktEntry: 11.1, Page 12 of 64
Case 2:22-cv-06894-MEMF-JC   Document 27   Filed 06/08/23   Page 4 of 22   Page ID #:236

4

1    THE COURT:  Wonderful.  So let me start with counsel

2    for Shirley Weber.  You can take the podium.  I have a couple

3    of questions for you, and then I will let you be heard on any

4    other matters you wish to be heard regarding.

5    Okay.  The first question is about the request for

6    judicial notice which included the -- a transcript or a

7    purported transcript of the video and then a link to the video.

8    And I guess my question is what is the significance of the

9    content of the video in light of the fact that it appears that

10   the plaintiff has properly asserted that the contents of the

11   video were not false?

12   MS. FERRARI:  The content of the video is

13   significant only if this Court credits plaintiff's position

14   that they have challenged whether the video is false or

15   misleading in their allegations in the Complaint and whether

16   the Court or any reviewing Court wishes to probe the truth of

17   those allegations.

18   But the Secretary's position, as set forth in the

19   reply brief, is the First Amendment analysis does not turn on

20   the specific content of the video.  What matters is that

21   Secretary of State had a belief and a view that the content in

22   the video was false or misleading election information and

23   reported it as such.

24   THE COURT:  And I guess because this is a motion to

25   dismiss and I take all of the plaintiff's allegations as true,

5

```
  1    I don't think that I'm in the position to determine whether the
  2    content of the video is false.
  3           I guess I can imagine a situation where if the video
  4    either contained falsehoods of judicially noticed facts like it
  5    said this proceeding happened on May 12th when it actually
  6    happened on May 11th or the video was clearly about rainbows
  7    and the Complaint said that it was about election integrity.
  8           But given the allegations in the Complaint, I don't
  9    see the relevance of the video.  But I want to make sure I'm
 10    not missing something.
 11           MS. FERRARI:  No, you are not.  The Secretary
 12    included it for completeness to have a complete record because
 13    it is central to the Complaint, you know, the video and
 14    allegations that it was false or misleading.
 15           THE COURT:  Okay.  And I guess to the extent that it
 16    is relevant, the relevance it seems would be to support the
 17    plaintiff's allegations that the Secretary's actions were
 18    retaliatory because the video by calling into question
 19    California elections is implicitly criticizing the agency that
 20    the Secretary is responsible for.
 21           At various points, the speaker criticizes what he
 22    calls the left for one could read it as alleging that the left
 23    wants to steal elections.  And I think it's probably judicially
 24    noticed fact that the Secretary is a member of the Democratic
 25    Party, an elected official.
```

(14 of 64), Page 14 of 64     Case: 23-3546, 03/06/2024, DktEntry: 11.1, Page 14 of 64
Case 2:22-cv-06894-MEMF-JC   Document 27   Filed 06/08/23   Page 6 of 22   Page ID #:238

6

1          And then in the video he talks about -- towards the

2     end that he believes the video is going to be censored.  So

3     anyway, to the extent that the content is relevant, it seems

4     that it would support the plaintiff's claim that the motive for

5     the Secretary's actions and possibly the social media actions

6     were to retaliate against their otherwise permissible speech.

7          MS. FERRARI:  Yes, Your Honor, I think that's a

8     conceivable reading of the Complaint, although I don't believe

9     that it's alleged quite as sharply as that, the basis for the

10    alleged retaliation motive rather.

11         THE COURT:  Okay.  Oh, the other question I had is,

12    because it wasn't clear to me from your reply, you do concede

13    at this point that Judicial Watch has standing just like

14    *O'Handley* had standing; correct?

15         MS. FERRARI:  I think the standing analysis is

16    likely to come down in plaintiff's favor.  I --

17         THE COURT:  But you don't concede that point?

18         MS. FERRARI:  I don't concede the point in that I

19    think plaintiffs have potentially failed to establish

20    redressability.  I -- the Secretary's view is that they have

21    not credibly alleged fear of reprisal or a chilling effect

22    based on the Secretary's actions and the fact that they are

23    prolific content creators.  But --

24         THE COURT:  Okay.  So then, since you don't concede

25    that point, I guess I need to hear a little bit more from you

(15 of 64), Page 15 of 64    Case: 23-3546, 03/06/2024, DktEntry: 11.1, Page 15 of 64
Case 2:22-cv-06894-MEMF-JC   Document 27   Filed 06/08/23   Page 7 of 22   Page ID #:239

7

```
 1   on that.  How, if at all, is the status of Judicial Watch

 2   different from the status of O'Handley --

 3            MS. FERRARI:  As far --

 4            THE COURT:  -- with respect to standing?

 5            MS. FERRARI:  Judicial Watch has premised its

 6   redressability argument on its allegation that the Secretary's

 7   alleged actions have discouraged it from posting content

 8   online.  And the Secretary questions the plausibility of that

 9   allegation.

10            THE COURT:  On what basis at the motion to dismiss

11   stage?

12            MS. FERRARI:  That they haven't alleged facts to

13   support a well-founded fear of reprisal or an unwillingness to

14   post content online for fear of what actions the Secretary

15   might take.

16            THE COURT:  And it's your position that that is

17   required -- that is required to show a chilling effect, a fear

18   of reprisal?

19            MS. FERRARI:  Facts to support -- I mean, we are

20   willing to submit on the tentative as it pertains to standing.

21            THE COURT:  Okay.  But it is important for the Court

22   to know because the record will reflect this whether it's

23   because the Secretary concedes that based upon controlling 9th

24   Circuit authority, Judicial Watch has standing, or you don't

25   concede that point in which case, the Court, of course, needs
```

(16 of 64), Page 16 of 64    Case: 23-3546, 03/06/2024, DktEntry: 11.1, Page 16 of 64
Case 2:22-cv-06894-MEMF-JC   Document 27   Filed 06/08/23   Page 8 of 22   Page ID #:240

8

```
 1   to go through the analysis and attempt to explain why whatever

 2   the Secretary's reasons for not conceding are not valid.

 3           So you can't have it both ways.  But I just want to

 4   be clear.  I'm not trying to push you in any one direction.  I

 5   just need the record to reflect accurately what the Secretary's

 6   position is.

 7           MS. FERRARI:  No, I understand, and I appreciate the

 8   explanation.  The Secretary -- the -- their allegations as

 9   to redress -- the Secretary is willing to submit to the

10   tentative on standing and does not contest that O'Handley is

11   liking controlling as to redressability.

12           THE COURT:  Okay.  Anything else you wish to be

13   heard on?

14           MS. FERRARI:  No, unless there's any other questions

15   that the Court has.

16           THE COURT:  Okay.  No, that's it.  Thank you.

17           MS. FERRARI:  May I reserve the right to respond to

18   points raised by Judicial Watch in argument?

19           THE COURT:  Yes.

20           MS. FERRARI:  Thank you, Your Honor.

21           MR. BEKESHA:  Good morning, Your Honor.

22   Michael Bekesha on behalf of plaintiff Judicial Watch.

23           I just want to start just real briefly on the

24   discussion of standing since that's where you left off.  Now,

25   based on -- there seems to be one case or several cases in this
```

9

```
 1   district In Re Ethereummax Investor Litigation.  That case --
 2            THE COURT:  Can I just stop you right here?  Unless
 3   you disagree with the tentative on standing, I'm not sure
 4   that's the best use of your time.  She hasn't conceded it, but
 5   she says they submit on the tentative.  It's pretty clear to me
 6   that O'Handley controls and your client has standing.
 7            So I don't know that you need to do more unless
 8   there's something in the tentative that you disagree with.  On
 9   standing I think your time would be better served on the other
10   parts.
11            MR. BEKESHA:  Thank you, Your Honor.
12            This case stands for a proposition if arguments are
13   not addressed in a reply brief, they are conceded.  And so that
14   was the only point I wanted to make.
15            THE COURT:  Understood.
16            MR. BEKESHA:  So it's our position that the
17   government has conceded on standing.
18            THE COURT:  Thank you.
19            MR. BEKESHA:  With regard to the merits or regarding
20   the two claims, we don't believe the O'Handley opinion is on
21   all fours.  We did not bring any claims --
22            THE COURT:  Except for on standing?
23            MR. BEKESHA:  That's correct, Your Honor, yes.
24   Talking only now about our two claims and the merits of those.
25            We did not bring claims alleging a Constitutional
```

10

1  violation based on a government actor causing a social media

2  company to act.  What we did was we brought a retaliation and a

3  regulation claim based on the actions of the Secretary of State

4  or more specifically OEC.

5            What OEC did here was it used or more specifically

6  misused its authority to take four specific actions against

7  Judicial Watch.  First, it monitored Judicial Watch's speech

8  since at least August of 2020.  It then falsely assessed

9  plaintiff's speech, the video in question, as misleading.

10           OEC also did not find that the plaintiff's video may

11 suppress voter participation or cause confusion and disruption

12 of the orderly and secure administration of elections which is

13 required by law.  And fourth, OEC used a close working

14 relationship and a dedicated pathway with YouTube to have

15 plaintiff's video removed within 24 hours.

16           Our argument is not focused on the communication

17 between OEC and YouTube like the *O'Handley* opinion was entirely

18 focused on the communication between OEC and Twitter in that

19 regard.

20           THE COURT:  With respect to the fourth action, isn't

21 that based upon the communications between the OEC and YouTube?

22 What else would it be based on?

23           MR. BEKESHA:  It's based on the creation and the

24 establishment of this working relationship and dedicated

25 pathway which was created by OEC for -- to take down social

(19 of 64), Page 19 of 64    Case: 23-3546, 03/06/2024, DktEntry: 11.1, Page 19 of 64
Case 2:22-cv-06894-MEMF-JC   Document 27   Filed 06/08/23   Page 11 of 22   Page ID #:243

11

 1  media posts that they disagreed with or they thought was

 2  misleading.

 3          THE COURT:  And isn't the pathway used by via

 4  communications made by OEC to the social media company?

 5          MR. BEKESHA:  (No audible response.)

 6          THE COURT:  I'm not understanding the distinction

 7  between -- you indicated that *O'Handley* was based on

 8  communications between OEC and -- was it Twitter?

 9          MR. BEKESHA:  Yes.

10          THE COURT:  And in this case, your distinction is

11  you are not relying on communications between OEC and YouTube.

12  You are relying on the close relationship and the dedicated

13  pathway.  That just seems like semantics.  The point is they

14  talked a lot about what they wanted.  Isn't that the

15  allegation?

16          MR. BEKESHA:  Well, the allegation is different also

17  because in *O'Handley*, the OEC used a public portal.  Here, OEC

18  used their statutory authority to create close working

19  relationships and a dedicated pathway.  So our focus --

20          THE COURT:  I'm just going to stop you right there.

21  I don't know what you mean by a close working relationship and

22  a pathway if not that they communicated to YouTube these are

23  our concerns or this is content that we are concerned about.

24  I'm really not getting the distinction between what happened

25  there and what happened in *O'Handley*.  So I need your

12

 1   assistance with that.

 2           MR. BEKESHA:  Sure.  Thank you, Your Honor.

 3           Our allegations are not focused solely on that

 4   communication as *O'Handley* was.  Our allegation, our claims, as

 5   clearly laid out in the Complaint, focus -- states that the

 6   retaliation was the actions taken by the Secretary.

 7           First, it was the monitoring of our speech.  Second,

 8   it was falsely assessing our speech as misleading.  Third, it

 9   was not following the statutory requirement of making a

10   determination on whether or not the video may suppress voter

11   participation or cause confusion.  And then fourth, it's the

12   creating of these pathways to have a communication, that's

13   right, with YouTube that resulted in the speech being taken

14   down within 24 hours.

15           Unlike in *O'Handley*, we know that YouTube received

16   the communication and took action after receiving that

17   communication.  That was not clear -- that was not alleged

18   plausibly alleged in *O'Handley*.  In *O'Handley*, you had a

19   communication from OEC to Twitter, and at some point in the

20   future, something was flagged.  That's all we know in

21   *O'Handley*.  There was no communication back and forth.

22           Here, communications occurred back and forth.

23   YouTube responded after taking -- before and after taking down

24   the video and let the Secretary of State -- let OEC know that.

25           And so when I talk about these close working

13

1   relationships and dedicated pathways, this wasn't just in

2   *O'Handley* where something was sent on a portal that a lot of

3   people had access to because Twitter needed some help.  This

4   was based on a working relationship that was developed by OEC

5   to satisfy its requirement or what the Secretary -- what OEC

6   believes was their requirement to mitigate.

7           And so our position is not that a communication

8   didn't happen.  But our allegation is that the chilling effect,

9   the second prong of the retaliation claim, is all of these

10  actions combined.  The fully using Section 10.5 to retaliate

11  against Judicial Watch by monitoring its speech, by assessing

12  its speech, then mitigating its speech.

13          And in this regard, the mitigation occurred -- was

14  using the close working relationships to have the back and

15  forth with YouTube that resulted within 24 hours of the video

16  taken down.  None of those allegations are in the *O'Handley*

17  Complaint.  That's not what was before the 9th Circuit.

18          Taking a look at the *O'Handley* opening and reply

19  brief at the 9th Circuit, it is clear that their allegations

20  were different.  In their opening brief to the 9th Circuit,

21  *O'Handley* stated that -- he alleged that appellees targeted him

22  for reprisal based on his speech and that the actions impeded

23  his speech restricting the reach of the message and ultimately

24  resulting in his ban from Twitter.

25          In the reply brief, he said the active retaliation

14

```
 1   was limiting the dissemination of O'Handley's November 12th

 2   tweet and restricting how users interacted with it.

 3           In that case the appellees was OEC but also Twitter

 4   and a bunch of other people.  I mean, they claim conspiracies,

 5   collusion, intimidation.  We don't allege any of that.  We

 6   don't allege that Twitter was -- or in our case, YouTube was

 7   acting under the authority of Section 10.5.  We are focused

 8   solely and exclusively on the actions taken by OEC under that

 9   authority.

10           You know, in that regard -- you know, we are not --

11   we are not alleging that Secretary -- that OEC is liable for

12   YouTube's decision to remove the September 22nd video.  We did

13   not allege that there was unconstitutional coercion.

14           We -- what we are arguing is that the adverse

15   action, the chilling, what would chill a person of ordinary

16   firmness was these four things that OEC took or focussed on

17   10.5, the monitoring, the assessing, and mitigating which is

18   required of OEC.

19           Moving on to the -- moving on to the regulation

20   claim, the second claim that Judicial Watch brought, again, our

21   claim is very different from what -- the allegations in

22   O'Handley.  What we have is how -- we are alleging or we are

23   plainly pled that the manner in which OEC understood and

24   enforced Section 10.5 as related to plaintiff is

25   unconstitutional.
```

15

1          OEC has and continues to unconstitutionally enforce

2   Section 10.5 against plaintiff by monitoring plaintiff's

3   speech, by misusing her authority, by falsely assessing

4   plaintiff's speech as misleading, by misusing her authority, by

5   failing to find that plaintiff's video my suppress voter

6   participation or cause confusion and disruption of the orderly

7   and secure administration of elections, and by misusing her

8   authority to mitigate --

9          THE COURT:  I'm going to ask you to slow down,

10  Counsel.

11          MR. BEKESHA:  I'm sorry, Your Honor.

12          And also fourth, misusing her authority to mitigate

13  by establishing a close working relationship and dedicated

14  pathway with YouTube to have plaintiff's video removed within

15  24 hours.

16          Again, the *O'Handley* Complaint and the *O'Handley*

17  claim is not on all fours here.  In *O'Handley*, in his opening

18  brief to the 9th Circuit, he stated that the alleged

19  unconstitutional regulation was the action taken by Twitter.

20          We didn't sue YouTube here, Your Honor.  We sued

21  OEC.  In his reply brief, he tried to change what his argument

22  was and said -- and explained that his -- that the portal

23  communication was the means through which the state regulated

24  O'Handley's speech.  Although here communication is a small

25  part of how OEC regulated Judicial Watch's speech --

16

 1            THE COURT:  I'm sorry.  You said a small part?

 2            MR. BEKESHA:  A small -- it's a piece of it.  I

 3    mean, it happened, and it was part of the mitigation.  It is

 4    not the only piece.  What we are focusing on, what we've

 5    alleged is a unconstitutional regulation, is the monitoring of

 6    the speech.  It's the assessing our speech as misleading.  It's

 7    the de- -- the viewing -- it's the failing to make a

 8    determination about whether our video would suppress voter

 9    participation or cause confusion.  And then it's also using the

10    authority to mitigate as a way of creating close working

11    relationships and a dedicated pathway to take down Judicial

12    Watch's speech.

13            One of the paragraphs in our Complaint specifically

14    points to the defendant's statements to the public that they

15    were creating these pathways to take down speech.

16            THE COURT:  What do you contend is the adverse

17    action -- I'm using that as a term of art -- engaged in by the

18    OEC or the Secretary?

19            MR. BEKESHA:  The adverse action, meaning the

20    actions taken that would chill a person of ordinary firmness

21    are the monitoring a plaintiff's speech under Section 10.5 --

22    I'm sorry.  We are going back to the retaliation claim?

23            THE COURT:  Yes.  And my concern is that, as set

24    forth in the tentative, the *O'Handley* identifies what types of

25    actions can be considered adverse actions, actions that are

UNITED STATES DISTRICT COURT            ER 24

17

1    regulatory, prescriptive, or compulsory in nature, and they

2    gave examples.

3         And so the examples that you have pointed to or the

4    four items that you have pointed to, I'm not sure if that's

5    what you are claiming are adverse actions or it's something

6    else.  For instance, the monitoring.  You claim that that is

7    adverse that is therefore actionable as possible retaliation?

8         MR. BEKESHA:  Monitoring itself, no, Your Honor.

9         THE COURT:  Okay.

10        MR. BEKESHA:  It is the monitoring, the misusing her

11   authority by falsely assessing.  It's the failure to comply

12   with the statute and make a determination about whether or not

13   the speech suppresses voter participation or causes --

14        THE COURT:  Let me stop you right there.  If the

15   Court disagrees with you that she was required to make such a

16   finding, what is your argument there?  Is the argument based on

17   the idea that she did not do something that she was required to

18   do by law?

19        And so assuming the Court disagrees with you and

20   does not find that she's required to make the finding that you

21   allege or the finding in the way that you allege, do you still

22   contend that the adverse action is the combination of the

23   monitoring, the assessing falsely, and the dedicated pathway?

24        MR. BEKESHA:  Yes.  Yes, Your Honor.  It is the

25   monitoring, the assessing, and the mitigating which is --

18

1      THE COURT:  Okay.  So even if she did not fail to

2  comply with the law, the other actions would still constitute

3  adverse actions subject to the Court's limitations on

4  retaliation?

5      MR. BEKESHA:  Yes, Your Honor.  That's the

6  regulatory action that was taken by OEC to -- that would chill

7  speech of a person of ordinary firmness.

8      THE COURT:  Understood.  Okay.  Anything further,

9  Counsel?

10      MR. BEKESHA:  I had one other quick point.  Looking

11  at the tentative ruling, it seemed to suggest that the

12  Complaint failed to allege that 10.5 was applied against

13  Judicial Watch.  We believe at least paragraph 28 specifically

14  states that allegation, an allegation that must be accepted as

15  true, in conjunction with several other paragraphs that focus

16  on the monitoring, on the assessing and mitigating which, as

17  the Secretary admits in her opening brief as well as the reply

18  brief, is required to be done, that it's a mandatory duty.

19      It's not just a mission, but it's a shell.  It's a

20  duty to monitor, assess, and mitigate.  And that is what the

21  Secretary did here.  And in doing so, she retaliated against

22  Judicial Watch as well as unconstitutionally regulated both on

23  viewpoint and content based.  I didn't address those two.

24      There was the discussion earlier about content based

25  but to also point to viewpoint based.  There's one paragraph in

19

1    the Complaint that highlights the mistrack- -- or the tracking

2    statement, and in that it talked about -- it said -- I believe

3    it was Tom Fitton, President of Judicial Watch, and it had

4    conservative in there.  I don't have the Complaint up in front

5    of me.

6           But clearly the Secretary -- if this was just

7    viewpoint neutral, whether or not Judicial Watch is

8    conservative or not would not matter.  So that also points to

9    viewpoint, Your Honor.

10          THE COURT:  Understood.  Thank you, Your Honor.

11          MR. BEKESHA:  Thank you, Your Honor.

12          THE COURT:  Anything further, Ms. Ferrari?

13          MS. FERRARI:  Very briefly, Your Honor.  I will try

14   to limit myself to points not addressed in the tentative.

15          One of the alleged acts that Judicial Watch argues

16   gives rise to liability is the false assessment.  But *O'Handley*

17   makes clear that the government is allowed to state its views

18   on election integrity.  So whether the statement was determined

19   in error or not to be false, it is immaterial for the purposes

20   of the government's speech analysis and is it not a misuse of

21   any authority.

22          Judicial Watch makes much of supposed differences

23   in the allegations between the two cases, *O'Handley* and

24   *Judicial Watch*.  And I would just note that the allegations --

25   the existence of the close working relationship between the

**UNITED STATES DISTRICT COURT**        **ER 27**

(28 of 64), Page 28 of 64    Case: 23-3546, 03/06/2024, DktEntry: 11.1, Page 28 of 64
Case 2:22-cv-06894-MEMF-JC   Document 27   Filed 06/08/23   Page 20 of 22   Page ID #:252

20

```
 1    platform and the public officials or other interested parties
 2    reporting content are nearly identity.  And the O'Handley
 3    Complaint does allege a back-and-forth discussion at
 4    paragraphs 76 through 78.
 5            And finally, the involvement of other parties in
 6    O'Handley is, again, not a distinction that has any difference
 7    because after the 9th Circuit found that there was no state
 8    action, it analyzed the OEC's liability independently.
 9            THE COURT:  Wonderful.  Thank you.
10            I do want to thank both counsel for your arguments
11    and for the briefing on this.  I appreciate it.  And the Court
12    will endeavor to issue its ruling shortly.
13            Did you need to be heard further?
14            MR. BEKESHA:  Just real quick, Your Honor.
15            THE COURT:  Okay.
16            MR. BEKESHA:  I know we addressed the O'Handley
17    opinion briefly in our opposition, but it was before the -- we
18    knew what the Secretary's arguments were going to be.  I think
19    I've covered our arguments today, but to the extent the Court
20    would need any additional briefing on how O'Handley -- how we
21    believe O'Handley doesn't apply, we'd be willing to do that if
22    that would help Your Honor.
23            THE COURT:  Oh, thank you.  I think you covered it
24    thoroughly in your opposition.  Thank you.
25            Okay.  With that, we will turn to our next case.
```

**UNITED STATES DISTRICT COURT**          **ER 28**

21

1   The parties are excused.

2         (At 9:38 a.m. the proceedings adjourned.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1                 **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5           I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6 COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7 FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8 THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9 THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10 STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11 ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12 IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13 CONFERENCE OF THE UNITED STATES.

14

15

16           DATED THIS  6TH  DAY OF JUNE, 2023.

17

18

19       /S/ MAREA WOOLRICH

20       _____
      MAREA WOOLRICH, CSR NO. 12698, CCRR
      FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JUDICIAL WATCH, INC.,

                   Plaintiff,

     v.

SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California,

                   Defendant.

Case No.:  2:22-cv-06894 -MEMF(JCx)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 14]**

Before the Court are a Motion to Dismiss (ECF No. 14) and two Requests for Judicial Notice (ECF Nos. 14-2 and 20-2) filed by Defendant Shirley Weber.  For the reasons stated herein, the Court hereby GRANTS the Motion to Dismiss and GRANTS both Requests for Judicial Notice.

## I.      Factual Background[1]

Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a not-for-profit organization which seeks to promote transparency, accountability and integrity in government as well as fidelity to the rule of

---

[1] All facts stated herein are taken from the allegations in Plaintiff Judicial Watch's Complaint unless otherwise indicated. ECF No. 1.

1

law.  ¶ 1.  As part of its public education mission, Judicial Watch regularly monitors election law and comments on and criticizes government actions that, in its view, undermine election integrity. *Id.*  Judicial Watch maintains a channel on YouTube, where it has posted "over 4,200 videos" since 2006.  ¶¶ 6-7.

On September 22, 2020, Judicial Watch posted a 26-minute video on YouTube which is central to the allegations in this case (the "September 22 Video").  ¶ 8.  The September 22 Video discussed numerous purported issues with various states' election procedures, including a discussion of California in particular.  ¶ 9.  YouTube removed the September 22 Video from YouTube on September 25, 2020.  ¶ 11.  The September 22 Video remains unavailable on YouTube.  *Id.*  At the time it was removed, the September 22 Video had 5,531 views.  ¶ 26

Defendant Dr. Shirley Weber ("Secretary Weber") is the Secretary of State of California.  ¶ 4.  Secretary Weber is California's chief elections officer.  *Id.*  Among other responsibilities, Secretary Weber oversees the Office of Elections Cybersecurity ("the OEC"), and acts through its officials and employees. *Id.*  The OEC was established pursuant to California Elections Code § 10.5 ("Section 10.5").  *See* Cal. Elec. Code § 10.5.  The OEC's primary mission includes monitoring and countering "false or misleading information regarding the electoral process . . . that may suppress voter participation or cause confusion and disruption" of elections.  Cal. Elec. Code § 10.5(b)(2).  As part of this, the OEC maintains a "Misinformation Tracking Sheet" and "Misinformation Tracker." ¶ 13.

The OEC has an interconnected relationship with YouTube and other social media companies.  ¶ 27.  The OEC has explained that it maintains close "working relationships" and "dedicated pathways" at each major social media company, and that it works closely and proactively with these companies to "keep misinformation from spreading, take down sources of misinformation as needed, and promote our accurate, official election information at every opportunity."  *Id.*

On September 22, 2020, the OEC identified the September 22 Video and added it to the OEC's "Misinformation Tracking Sheet" and "Misinformation Tracker," alongside brief notes describing certain claims in the video.  ¶¶ 13-14.  These notes were not predicated on a finding of

1  fact based on Section 10.5.  ¶ 24.  One note in particular described Judicial Watch as a "conservative

2  group" and noted how many views the video had at the time of the note. ¶ 14.

3     On September 24, 2020, an OEC employee emailed YouTube to report the September 22

4  Video.  ¶ 20.  The employee explained that she was reporting the video because "it misleads

5  community members about elections" and "misrepresents the safety and security of mail-in ballots."

6  *Id.*  She then thanked the recipients for their "time and attention on this matter."  *Id.*  YouTube

7  responded the next day (September 25, 2020) and wrote "[w]e will look into this and get back to you

8  as soon as we can."  ¶ 21.  That same day, Judicial Watch noticed that the September 22 Video had

9  been removed from YouTube.  ¶ 22.  Two days later, YouTube wrote again to the OEC employee,

10  thanking the OEC for "raising this content to [YouTube's] attention" and explaining that it had been

11  removed "for violating [YouTube's] policies." ¶ 23.  The email concluded with "Please do not

12  hesitate to reach out if there are any other questions or concerns you may have."  *Id.*  The OEC had

13  been monitoring Judicial Watch's social media activity since at least August 2020, and continues to

14  do so. ¶¶ 29-30.  This monitoring has in part been done through SKDKnickerbocker LLC (SKDK), a

15  consulting firm that was also advising the Biden campaign in September 2020. ¶ 29**.**

16     Judicial Watch intends to continue using YouTube as an important means of communicating

17  to the public regarding election integrity. ¶ 31.

18   **II.    <u>Procedural History</u>**

19     Judicial Watch filed its Complaint on September 23, 2023.  ECF No. 1.  The Complaint

20  alleges three causes of action: (1) a claim pursuant to 42 U.S.C. § 1983 for violations of the First and

21  Fourteenth Amendments to the United States Constitution, (2) a claim pursuant to 42 U.S.C. § 1983

22  for Unconstitutional Regulation of Speech in violation of the First and Fourteenth Amendments to

23  the United States Constitution, and (3) a claim for violations of the California Constitution.  Compl.

24  ¶¶ 32-45.

25     Secretary Weber filed her Motion to Dismiss ("Motion") on November 18, 2022.  ECF No.

26  14.  She filed her first Request for Judicial Notice ("First Request") alongside that Motion, also on

27  November 18, 2022.  ECF No. 14-2.  Judicial Watch filed an Opposition to Secretary Weber's

28  Motion ("Opposition") on March 23, 2023.  ECF No. 19.  Secretary Weber filed a Reply in support

1  of her Motion ("Reply") on April 20, 2023. ECF No. 20.  She filed her second Request for Judicial

2  Notice ("Second Request") on April 20, 2023 as well. ECF No. 20-2.

3  **III.    <u>Applicable Law</u>**

4      Secretary Weber's brings her Motion pursuant to Federal Rules of Civil Procedure 12(b)(1)

5  and 12(b)(6).  The standards for each Rule are discussed below, as is the standard for a request for

6  judicial notice.

7      **a.  Request for Judicial Notice**

8      A court may take judicial notice of facts not subject to reasonable dispute where the facts

9  "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

10  readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

11  201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record,"

12  but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of*

13  *Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County*

14  *of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Moreover, even when documents are not

15  physically attached to the complaint, courts may nonetheless consider such documents if: "(1) the

16  complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

17  party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d

18  984, 999 (9th Cir. 2011); *Lee*, 250 F.3d at 688.

19      **b.  Rule 12(b)(1)**

20      Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") allows a party to seek to dismiss

21  a complaint for lack of subject-matter jurisdiction. "[S]tanding and ripeness pertain to federal courts'

22  subject matter jurisdiction" and so "they are properly raised in a Rule 12(b)(1) motion to dismiss."

23  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a

24  12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the

25  claims. *Id.*

26      Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v.*

27  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter

28  jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint

**ER 34**

are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### c. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

/ / /

/ / /

**IV.** **The First and Second Requests for Judicial Notice are Granted**

Secretary Weber requested that the Court take judicial notice of: (1) a transcript of a publicly-available video that appears to be a duplicate of the September 22 Video (*see* ECF No. 14-1; ECF No. 14-2); and (2) the plaintiff's complaint in *O'Handley v. Padilla*, the district court case that led to the Ninth Circuit's ruling in *O'Handley v. Weber* (*see* ECF No. 20-2).  Judicial Watch has not objected to either request.  The Court finds that judicial notice is appropriate for each of these items, and so will grant both Requests.

First, the video transcript is appropriate for judicial notice.  A court may take judicial notice of documents not attached to a complaint if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.  Here, there can be little doubt that the content of the September 22 video is referred to in Judicial Watch's complaint, and that the content of the September 22 is central to Judicial Watch's claim.  *See, e.g.*, Compl. ¶ 12.  The only issue is whether a party might question whether the transcript is accurate, or whether the transcript is indeed of a duplicate of the September 22 video.  All indications—including the title, the fact that it came from a Vimeo account associated with Judicial Watch, the length, and the content—suggest it is the same video.  The transcript is from a reputable company and is authenticated.  And Judicial Watch had an opportunity and opted not to oppose the First request or otherwise object.  Accordingly, the Court finds no party questions the authenticity, and will take judicial notice of the transcript, which is Exhibit A to ECF No. 14-1.[2]  The First Request is GRANTED.

Second, the complaint from *O'Handley v. Padilla* is also appropriate for judicial notice.  A court may take judicial notice of "undisputed matters of public record," *Lee*, 250 F.3d at 690.  The

---

[2] As counsel for Secretary Weber acknowledged at the hearing, however, the *content* of the September 22 Video is largely irrelevant given the well-pleaded allegations in the Complaint about the nature of the video and the nature of the Secretary's assessment of the video as well as the fact that the content does not appear to *contradict* any of the allegations in the Complaint. At best, the content supports Judicial Watch's allegation of a possible retaliatory motive, given the implicit criticisms of the Office of the Secretary of State, the assertions that "the left wants to be able to steal elections," and the warning that the video might be "censored . . . by YouTube." *See generally* Exhibit A to ECF No. 14-1.

1   complaint in question is an undisputed matter of public record, and so the Court will take judicial

2   notice of it.[3]  That document is Exhibit A to ECF No 20-1.  The Second Request is GRANTED.

3   **V.    The Motion to Dismiss is Granted**

4       Secretary Weber's Motion raises two principal arguments.  First, Secretary Weber argues that

5   Judicial Watch does not have standing, and so the federal claims in the Complaint should be

6   dismissed pursuant to Rule 12(b)(1).  *See* Motion at 8-14.  Second, Secretary Weber argues that the

7   alleged conduct did not constitute a violation of the First Amendment, and so the Complaint should

8   be dismissed pursuant to Rule 12(b)(6).  *See* Motion at 14-18.

9       A recent Ninth Circuit decision—*O'Handley v. Weber*—is on all fours with the issues

10  presented in the Motion to Dismiss and dictates this Court's result, namely, that Judicial Watch's

11  Complaint cannot survive. 62 F.4th 1145 (9th Cir. 2023).  In *O'Handley*, the OEC flagged the

12  plaintiff's Twitter account to Twitter.  *Id.* at 1154.  Twitter then took actions to limit other users'

13  ability to see the plaintiff's posts, and then suspended the account, before eventually reinstating it.

14  *Id.* at 1154, 1162.  O'Handley alleged that he suffered an injury in the form of "inability to

15  communicate with his followers and pursue his chosen profession as a social media influencer."  *Id.*

16  at 1161.  Secretary Weber moved to dismiss on the same two grounds as she does here: standing

17  pursuant to Rule 12(b)(1), and failure to state a claim pursuant to Rule 12(b)(6).  *Id.* at 1155.  The

18  Ninth Circuit held that O'Handley had standing to pursue a cause of action against Secretary Weber.

19  *Id.* at 1162.  However, the court held that O'Handley failed to allege that the defendants "engage[d]

20  in any unconstitutional acts," and so dismissed the claim based on Rule 12(b)(6). *Id.* at 1164.

21      Because *O'Handley* is factually analogous, recent, and binding, its reasoning controls.

22  **A. Judicial Watch Alleged Facts Sufficient for Standing**

23      To establish standing, a plaintiff must allege that he or she has "1) suffered an injury in fact,

24  (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

25

26

27  [3] The only significance of the complaint in O'Handley is that it demonstrates whether the facts alleged by

28  O'Handley in his complaint can be distinguished from the facts alleged by Judicial Watch in its Complaint—
    and therefore whether the Ninth Circuit decision in *O'Handley* controls.

1  redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as*

2  *revised* (May 24, 2016).  The plaintiff bears the burden of establishing standing.  *Id.*

3        The Ninth Circuit's *O'Handley* decision, which significantly clarified the issue of standing,

4  was published after Secretary Weber filed her Motion, but before Judicial Watch filed its Opposition

5  or Secretary Weber filed her Reply.  *See* Motion (filed November 18, 2022); *O'Handley*, 62 F.4th

6  1145 (published March 10, 2023); Opp. (filed March 23, 2023); Reply (filed April 20, 2023).

7  Judicial Watch argued in its opposition that *O'Handley* controlled standing, and suggested that

8  Secretary Weber should no longer contest the issue in light of *O'Handley*.  *See* Opp. at 4 n.2.

9  Secretary Weber did not address standing at all in her reply.  *See* Reply.

10        Secretary Weber does not concede standing, as her counsel explained at the hearing on the

11  Motion on May 11, 2023.  But Secretary Weber only has concerns with respect to one of the three

12  requirements: redressability.  Specifically, Secretary Weber argues that Judicial Watch has not

13  plausibly alleged facts showing it has a fear of future actions by Secretary Weber or the OEC.  But

14  despite this, Secretary Weber's counsel acknowledged that *O'Handley* appears to control the issue.

15  In light of this acknowledgement, and Secretary Weber's failure to rebut Judicial Watch's arguments

16  on standing in her Reply, the Court finds that Secretary Weber has effectively conceded standing.

17  *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived

18  where party "failed to develop any argument").  Even if she had not, *O'Handley* controls—given

19  Judicial Watch's allegations regarding its goals and activities, *see, e.g.*, Compl. ¶ 31, it has plausibly

20  alleged a fear of future actions.  *See* 62 F.4th at 1162.

21        Thus, Judicial Watch has established standing.

22      **B.  Judicial Watch Has Not Validly Alleged Any Violation of the First or Fourteenth**

23          **Amendments**

24        As the *O'Handley* court explained, there are several ways a plaintiff might validly allege a

25  constitutional violation based on a government actor causing a social media company to act.

26  *O'Handley*, 62 F.4th at 1162.  First, a government actor could in some circumstances be held liable

27  for the *company's* actions.  *Id.*  This could occur if the government "coerce[d]" the company in to

28  "performing a particular act" by threats of "adverse action," or if the government provided "positive

1    incentives" so powerful that the incentives "essentially compel[led]" the action.  *Id.* at 1158.

2    Alternatively, the government actor could be liable if the government and the company entered into

3    a conspiracy with a shared "specific intent" to "violate constitutional rights." *Id.* at 1159; 1163.

4    Second, the government actor could be liable for *its own* conduct.  *Id.* at 1162.  This could occur if

5    the government coerced the company in to censoring disfavored speech.  *Id.* at 1163.  Or, a

6    government actor could be liable if the government actor took adverse action in retaliation against

7    protected speech.  *Id.*

8          The *O'Handley* court analyzed all of these possibilities, and found that none applied.[4]  *Id.* at

9    1164.  For the same reasons, none apply to Judicial Watch's Complaint: Under the controlling

10   authority of *O'Handley*, Judicial Watch has simply failed to allege any facts that could show a

11   constitutional violation.

12          i.    Secretary Weber is not Liable for YouTube's Decision to Remove the

13                September 22 Video

14         The *O'Handley* court held that "Secretary Weber is not responsible for any of Twitter's

15   content-moderation decisions with respect to O'Handley."  *Id.* at 1162.  First, the court found that

16   the OEC had not coerced Twitter.  *Id.* at 1157-58.  Crucially, the court found that O'Handley failed

17   to allege that OEC made threats against Twitter.  *Id.* at 1157.  At most, the OEC "requested" that

18   Twitter take action, and Twitter "was free to ignore" this request.  *Id.* at 1158.  Second, the court

19   found that O'Handley's allegations were not sufficient for a conspiracy between Twitter and the

20   government.  At most, the allegations suggested a "meeting of the minds to promptly address

21   election misinformation, not a meeting of the minds to violate constitutional rights as would be

22   required."  *Id.* at 1159.

23         The same is true here: Secretary Weber and the OEC are not responsible for any of

24   YouTube's content moderation decisions with respect to Judicial Watch, including YouTube's

25

26   _____

27   [4] The *O'Handley* court also examined other theories that Mr. O'Handley alleged, including an equal
     protection claim and unconstitutional vagueness.  *See O'Handley*, 62 F.4th at 1164.  Judicial Watch
28   has not alleged these theories or any facts that might support them, so this Court need not examine
     them.

**ER 39**

decision to remove the September 22 Video.  First, there is no allegation that would support a finding that the OEC coerced YouTube.  Judicial Watch has not alleged that the OEC made any threats against YouTube.  The emails between YouTube and the OEC quoted in the complaint do not show any such threats.  *See* Compl. ¶¶ 20-23.  The "interconnected relationship" that Judicial Watch alleges exists between the OEC and YouTube is not coercion either.  *See* Compl. ¶ 27.  No allegations support an inference of coercion, all facts alleged rather appear to be "persuasion" of the sort that the Ninth Circuit held was permissible. *See O'Handley*, 62 F.4th at 1164.  Nor is there any allegation of "positive incentives" that "essentially compel[led]" YouTube to act as it did.  *See O'Handley*, 62 F.4th at 1158.  And second, there is no allegation of a conspiracy, or of any meeting of the minds with the intent to deprive Judicial Watch of its constitutional rights.  In sum, Judicial Watch has made no allegations that could make Secretary Weber or the OEC liable for YouTube's removal of the video.

ii.    <u>The OEC's Conduct was not Unconstitutional</u>

As explained in *O'Handley*, even if Secretary Weber is not liable for YouTube's acts, this "does not preclude [a plaintiff] from challenging the Secretary's own conduct."  *O'Handley*, 62 F.4th at 1162.  However, in analyzing her conduct, the *O'Handley* court found Secretary Weber not liable.  *Id.* at 1163.

*1.   There are no Allegations of Unconstitutional Coercion*

First, the court found that O'Handley's allegations did not amount to unconstitutional coercion by Secretary Weber or the OEC.[5]  *Id.*  The United States Supreme Court has held that the government may not compel an intermediary to censor disfavored speech.  *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68-72 (1963).  But as the *O'Handley* court explained, there is "a line between coercion and persuasion," and mere persuasion is "permissible government speech."  *O'Handley*, 62 F.4th at 1163.  The OEC's communications with Twitter were mere persuasion, and "Twitter then decided how to respond."  *Id.*  Although O'Handley argued that "intimidation is

---

[5] This is closely related to the coercion analysis above, but distinct in that it focuses on the government's own conduct, rather than inquiring as to whether the government should be liable for the coerced conduct of another actor.

1   implicit," the court explained that this is not the case because "the OEC's mandate gives it no

2   enforcement power," and even if the OEC had enforcement power over Twitter, "[a]gencies are

3   permitted to communicate in a non-threatening manner with the entities they oversee without

4   creating a constitutional violation." *Id.*

5       The same is true here; as discussed above, there is no allegation in Judicial Watch's

6   complaint that would support the inference that the OEC coerced YouTube to censor disfavored

7   speech.  The emails cited in the Complaint, and the allegations regarding an "interconnected

8   relationship" amount at most to persuasion.  *See* Compl. ¶¶ 20-23; ¶ 27.  These allegations are a far

9   cry from the facts of *Bantam Books*, where the government officers made "thinly veiled threats" of

10  prosecution to coerce a private actor.  *See* 372 U.S. at 68.  The persuasion alleged here is permissible

11  government speech. *See O'Handley*, 62 F.4th at 1163.

12              *2.   The Retaliation Claim Fails Because There was no Adverse Action*

13      Second, the *O'Handley* court held that O'Handley did not sufficiently allege impermissible

14  retaliation.  *Id.*  Retaliation requires that a plaintiff show: "(1) he engaged in constitutionally

15  protected activity; (2) as a result, he was subjected to adverse action by the defendant that would

16  chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there

17  was a substantial causal relationship between the constitutionally protected activity and the adverse

18  action." *Id.* (quoting *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010)).  The court

19  held that O'Handley failed on the second prong, because the OEC's communications to Twitter

20  expressing concerns about a post are not an adverse action.  *Id.*  As the court explained, California

21  has "a strong interest in expressing its views on the integrity of its election process" and sharing

22  those views directly, rather than speaking publicly, "does not dilute [California's] speech rights or

23  transform permissible government speech into problematic adverse action."  *Id.* at 1163-64.

24      In the hearing on May 11, 2023, Judicial Watch argued that a combination of four activities

25  by the OEC amounted to an adverse action.  Those activities were: (1) monitoring Judicial Watch's

26  speech (*see* Compl. ¶¶ 29, 35); (2) making a "false assessment" that the September 22 video was

27  misleading (*see* Compl. ¶¶ 10, 12-15; 26; 28; 25); (3) failing to make a finding required by law (*see*

28

1     Compl. ¶ 24); and (4) using a "close working relationship" and "dedicated pathways" to cause

2     YouTube to remove the September 22 Video (*see* Compl. ¶¶ 20-23, 27).

3        The *O'Handley* holding controls here and requires this Court to find that the OEC's conduct

4     was not an adverse action. As the *O'Handley* court explained, "[t]he most familiar adverse actions

5     are exercise[s] of governmental power that are regulatory, proscriptive, or compulsory in nature and

6     have the effect of punishing someone for his or her speech." *O'Handley* 62 F.4th at 1163 (quoting

7     *Blair v. Bethel School District*, 608 F.3d 540, 544 (9th Cir. 2010)). "[F]or adverse, retaliatory

8     actions to offend the First Amendment, they must be of a nature that would stifle someone from

9     speaking out." *Blair*, 608 F.3d at 544. Examples of adverse actions include loss of a job, revocation

10    of a business license, retaliation against a prisoner by prison officials, or targeting of citizens by law

11    enforcement. *Id.*

12        Even considered in combination, the four activities Judicial Watch points to do not constitute

13    an adverse action. The combined activities are significantly different from the prototypical examples

14    listed above, and do not punish Judicial Watch for its speech. *See O'Handley* 62 F.4th at 1163. The

15    *O'Handley* court made clear that California communicating its views directly to a social media

16    company "does not dilute its speech rights or transform permissible government speech into

17    problematic adverse action." *Id. at* 1164. And although this communication was only the final

18    activity, the additional activities of monitoring social media posts and making allegedly "false"

19    assessments do not change the fundamental character of the OEC's actions. The sum total of the

20    behavior was that California formed views and then expressed those views in a permissible way. *Id.*

21    *at* 1164. As to the third activity, even if Judicial Watch is correct that the OEC violated California

22    law by failing to make a finding—a claim this Court cannot hear for the reasons discussed below—

23    no authority suggests this violation of the law would transform conduct that does not otherwise

24    qualify into an adverse action. Based on the reasoning of the O'Handley court, the OEC's conduct

25    was not an adverse action. See id. And for the same reasons, no individual activity alleged amounts

26    to adverse action.

27        Thus, the retaliation claim fails on the second prong, because—as dictated by O'Handley—

28    no adverse action against Judicial Watch occurred. The Court need not reach the remaining prongs.

*3. O'Handley is not Distinguishable*

Judicial Watch attempted in its Opposition to distinguish from O'Handley. See Opp. at 14-15. These arguments fail, and the Court finds O'Handley controlling on all issues except where explicitly stated otherwise.

Judicial Watch argues first that the allegations here suggest a more direct link between the OEC's and YouTube's actions with respect to Judicial Watch than between the OEC's and Twitter's actions with respect to O'Handley. See Opp. at 14. This purported distinction makes no difference, because in both cases a causal line can be drawn sufficient for standing, and the holding in *O'Handley* did not rest on a lack of causation.

Next, Judicial Watch argues that the specific actions the OEC took here are different from those in O'Handley. See Opp. at 14-15. Here, Judicial Watch argues, it has alleged more than just that the OEC flagged a video, but also alleged that the OEC monitored speech, made a "false assessment," and violated California law by failing to make a finding. But O'Handley involved nearly identical allegations made in different words. O'Handley alleged that the OEC set out on a program to "quash politically-disfavored or inconvenient speech" including "speech implicating [the Secretary of State's] administration of elections." ECF No. 20-1 ¶ 72-77. This is similar to the allegation of monitoring. Although Judicial Watch alleges that it specifically was monitored (Compl. ¶ 29), while O'Handley involved monitoring of a broad category of speakers, the Court sees no distinction, particularly because the O'Handley allegations make clear that O'Handley's tweets specifically were caught up in the monitoring. See ECF No. 20-1 ¶¶ 72-77. O'Handley also alleged that his tweet was labeled "misinformation" despite not actually being misinformation. See ECF No. 20-1 ¶ 74. This is very similar to Judicial Watch's allegation of a "false assessment." The Ninth Circuit did not find this allegation relevant to whether there was adverse action. *See O'Handley*, 62 F.4th at 1162-63. And although O'Handley did not make the argument that the OEC was required to make a finding of fact, he raised other allegations regarding purported violations of law by the OEC. *See* ECF No. 20-1 ¶ 52 ("[the secretary of state] awarded this contract [to SKDK] despite having no budgetary authority"). And in any case, if there was any cause of action based on these purported violations of the law, it would be a state law claim, which the Court cannot hear for the reasons

1 described below.  Finally, O'Handley too—like Judicial Watch—alleged and complained of a "close

2 working relationship" between the social media company and the OEC. In sum, the purported

3 differences between O'Handley's allegations and Judicial Watch's, to the extent they are differences

4 at all, do not change the outcome.

5                           *4.   Judicial Watch's As-Applied Challenge Fails*

6        Judicial Watch raises one additional legal argument not specifically addressed in *O'Handley*:

7 that California Election Code Section 10.5 is an unconstitutional regulation of speech.  *See* Opp. at

8 15-17.  Judicial Watch argues that Section 10.5, "as interpreted and enforced by Defendant here"

9 "suffers from overbreadth" and is "an unconstitutional content- and/or viewpoint-based regulation of

10 speech that cannot satisfy strict scrutiny."  Opp. at 15.  This appears to be part of Judicial Watch's

11 second cause of action. *See* Compl. ¶¶ 40-42.  Judicial Watch made clear in its Opposition that the

12 challenge against Section 10.5 "focuses on the validity of how Defendant has understood and

13 applied her authority under Section 10.5 in this instance." Opp. at 15.  In other words, this is an as-

14 applied challenge, not a facial challenge, as Judicial Watch has not alleged or argued that Section

15 10.5 is unconstitutional in all cases.

16        Although *O'Handley* did not address these specific arguments, it nonetheless controls.

17 O'Handley argued that Section 10.5 was void for vagueness.  *O'Handley*, 62 F.4th at 1164.  The

18 court construed this in part as an as-applied challenge, and concluded that "O'Handley's as-applied

19 challenge also fails because Elections Code § 10.5 was never applied against him."  *Id.*  The same is

20 true here.  The OEC took extremely similar actions in *O'Handley* as it did here, by messaging a

21 social media company with concerns about one specific post.  At the hearing on May 11, 2022,

22 Judicial Watch pointed to the allegations in paragraph 28 of its complaint in an attempt to show that

23 Section 10.5 was applied against Judicial Watch.  The relevant part of that paragraph is the

24 allegation that the "OEC was acting under Section 10.5 of the California Election Code."  *See*

25 Compl. ¶ 28.  O'Handley made a nearly identical allegation, that the defendants "used California

26 Election Code § 10.5" against O'Handley.  The Ninth Circuit nevertheless held that the OEC had not

27 applied Section 10.5 against the plaintiff, and that this foreclosed any as-applied challenge.  *See*

28 *O'Handley*, 62 F.4th at 1164.  The Court makes the same finding here: The Complaint fails to

1    plausibly allege that Section 10.5 was applied against Judicial Watch, so Judicial Watch's as-applied

2    challenge fails.

3         **C. Sovereign Immunity Bars the State Law Claims**

4         Judicial Watch alleges that Secretary Weber's conduct "violated Plaintiff's rights under

5    article I., sections 2(a) and 3(a) of the California Constitution.  Compl. ¶ 44.  Both parties agree that

6    this claim is barred by sovereign immunity under the Eleventh Amendment to the United States

7    Constitution.

8         Sovereign immunity generally bars federal courts from hearing suits against states.

9    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-102 (1984).  This also applies to suits

10    against state officials where "relief sought nominally against an officer" "would operate against" the

11    state itself.  *Id.* at 101.  Here, that is exactly what this suit is; Judicial Watch sued Secretary Weber,

12    but the relief it seeks would operate to limit the actions of the State of California.  Thus, sovereign

13    immunity applies.

14         There is a limited exception for suits alleging that a state official's actions violate the federal

15    constitution.  *Id.* at 102; *see also Ex parte Young*, 209 U.S. 123, 159-160 (1908).  This exception

16    would allow this Court to hear Judicial Watch's federal constitutional claims.  But it does not apply

17    to state constitutional claims.  *Pennhurst*, 465 U.S. at 102 (explaining that *Ex Parte Young* only

18    applies to suits "suits alleging conduct contrary to 'the supreme authority of the United States.'").

19    Thus, this Court is barred from considering Judicial Watch's claim pursuant to the California

20    Constitution, and it must be dismissed.

21         **D. Dismissal Will Be Without Leave to Amend**

22         Courts generally grant leave to amend dismissed claims, unless "it is clear the complaint

23    could not be saved by any amendment.  *Manzarek*, 519 F.3d at 1031.

24         Here, the Court finds that amendment would be futile, and sees no way that Judicial Watch

25    could amend sufficiently to state a claim upon which relief could be granted.  The actions Secretary

26    Weber and OEC allegedly took did not violate the United States Constitution or any other federal

27    law, and Secretary Weber is immune from state law claims.  The Court notes that the District Court

28    in *O'Handley* took this same approach, for similar reasons.  *O'Handley v. Padilla*, 579 F. Supp. 3d

1163, 1203. (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023).

All claims will be dismissed without leave to amend.

## <u>CONCLUSION</u>

For the reasons stated above, Secretary Weber's Motion is GRANTED as to all claims. Judicial Watch's Complaint is dismissed without leave to amend pursuant to Rule 12(b)(6). Both the First and Second Requests for judicial notice are GRANTED.


IT IS SO ORDERED.


Dated: May 22, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

**ER 46**

ROBERT PATRICK STICHT (SBN 138586)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., | Case No. 2:22-cv-6894 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, | |
| Defendants. | |

Plaintiff JUDICIAL WATCH, INC. ("JUDICIAL WATCH") brings this action against Defendant SHIRLEY WEBER ("WEBER"), in her official capacity as Secretary of State of the State of California, for violating Plaintiff's rights under the First and Fourteenth Amendments to the Constitution of the United States and article I, sections 2(a) and 3(a) of the California Constitution. As grounds therefor, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over Plaintiff JUDICIAL WATCH's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a). The Court has jurisdiction over Plaintiff JUDICIAL WATCH's California Constitution claim

1     pursuant to 28 U.S.C. § 1367.

2         2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

3     Defendant WEBER resides in this judicial district.

4                  **PARTIES**

5         3.     Plaintiff JUDICIAL WATCH, INC. is a not-for-profit, educational

6     organization incorporated under the laws of the District of Columbia and

7     headquartered at 425 Third Street SW, Suite 800, Washington, DC 20024.  Plaintiff

8     seeks to promote transparency, accountability, and integrity in government and

9     fidelity to the rule of law.  As part of this public education mission, Plaintiff regularly

10     monitors developments in election law, brings lawsuits to promote election integrity,

11     and publicly comments on and criticizes government actions that, in Plaintiff's view,

12     undermine election integrity.

13         4.     Defendant SHIRLEY WEBER is the Secretary of State of the State of

14     California.  As Secretary of State, Defendant is California's chief elections officer

15     and is responsible for administering provisions of the Election Code, including

16     section 10.5 of the California Election Code.  Cal. Gov. Code § 12172.5; Cal. Elec.

17     Code § 10.5.  As the Secretary of State, Defendant also oversees the Office of

18     Elections Cybersecurity ("OEC") and acts through OEC officials and employees.

19     Cal. Elec. Code §10.5(a).  She is being sued in her official capacity.

20            **STATEMENT OF FACTS**

21         5.     It is not the role of the state to police the opinion of citizens, yet OEC

22     did just that when she monitored Plaintiff's YouTube channel, purportedly assessed

23     the contents of a video Plaintiff posted on the channel as being "misleading," and

24     caused the video to be removed from YouTube's video sharing and social media

25     platform.

26         6.     Plaintiff has maintained a YouTube channel since May 16, 2006.

27     Among Plaintiff's other social media presences, Plaintiff's YouTube channel is an

28     important means of communicating with its followers and supporters and

disseminating information to the public in furtherance of the organization's public education mission.

7.    Plaintiff has posted over 4,200 videos on its YouTube channel that, as of the date of this complaint, have garnered nearly 94 million views.  Plaintiff's YouTube channel has more than 502,000 subscribers.

8.    On September 22, 2020, Plaintiff posted on its YouTube channel a video entitled "**ELECTION INTEGRITY CRISIS** Dirty Voter Rolls, Ballot Harvesting & Mail-in-Voting Risks!"

9.    The 26-minute video featured Judicial Watch President Tom Fitton discussing vote-by-mail processes, changes to states' election procedures, ballot collection (sometimes referred to as "ballot harvesting"), and states' failures to clean up their voter rolls, among other topics.  Mr. Fitton's comments were informed by successful lawsuits brought by Plaintiff against Los Angeles County and Defendant in 2017 to compel the county and State to comply with the National Voter Registration Act's voter list maintenance requirements (*Judicial Watch, Inc., et al. v. Logan, et al.*, Case No. 2:17-08948 (C.D. Cal. Dec. 13, 2017)), and against Governor Gavin Newsom and Defendant in 2020 challenging the Governor's attempt to unilaterally change the State's 2020 election procedures to an all vote-by-mail system (*Issa, et al. v. Newsom*, et al., Case No. 2:20-cv-01044) (C.D. Cal. May 21, 2020). The former resulted in a Consent Decree that compelled Defendant and Los Angeles County to implement several new practices and procedures to clean up state and county voter registration rolls.  The latter compelled the State of California to comply with the Elections Clause (art. I, sec. 4) and the Electors Clause (art. II, sec. 1) of the U.S. Constitution to change its 2020 voting procedures to an all vote-by-mail system. Plaintiff received a substantial fee award in *Issa*.

10.    The views that Mr. Fitton shared in the September 22, 2020 video were supported not just by Judicial Watch's own substantial experience advancing election integrity and successful litigation against Defendant, but also by nonpartisan and

bipartisan studies and reports and numerous other sources.  Mr. Fitton's comments were neither false nor misleading, nor was there any evidence that Mr. Fitton's comments "may suppress voter participation or cause confusion and disruption of the orderly and secure administration of elections."  Cal. Elec. Code § 10.5(b)(2).

11.    On or about September 25, 2020, YouTube informed Plaintiff that it had removed Plaintiff's video.  The video has not been available on YouTube since that date.

12.    Plaintiff subsequently learned through a California Public Records Act ("PRA") request directed to Defendant's office that OEC had purportedly assessed Plaintiff's video to be misleading and caused the video to be removed from YouTube's video sharing platform.

13.    Specifically, according to records obtained by Plaintiff in response to Plaintiff's December 30, 2020 PRA request, on or about September 22, 2020, OEC listed the video on its "Misinformation Tracking Sheet" or "Misinformation Tracker."

14.    Under the column entitled "Screenshots/Text/Link," followed by a link to Plaintiff's video on YouTube, OEC wrote:

> The states are taking reasonable steps to clean up the rolls and that led in part to a settlement with Los Angeles county in Californian Michigan they chant the court uh one court judge changed the rules to allow them to count ballots 14 days after the election and mandated ballot harvesting and what is ballot harvesting it basically means anybody can take anyone's ballot and bring it to the polling place again more opportunity (sic).

15.    Under the column entitled "Misinformation," OEC copied the text under the "Screenshots/Text/Link" column, then wrote:

> Ballot Collection/Harvesting; Voter Rolls.  Head of conservative group Judicial Watch hosts video alleging Democrats benefit from incorrect voter rolls and ballot collection.  Has 2,398 views as of 4:07pm 9/22.

16.    Under the column entitled "Indicator," OEC wrote, "Ballot Collection."

17.    Under the column entitled "Social Media Action Taken," OEC wrote,

"Video was removed from YouTube."

18. Under the column entitled "Result," OEC wrote, "Removed."

19. Also according to records obtained through the PRA, OEC communicated with YouTube and/or Google, which are subsidiaries of Alphabet, Inc., to have Plaintiff's video taken down.

20. Specifically, on or about on September 24, 2020, OEC Social Media Coordinator Akilah Jones emailed "civics-outreach@google.com" and copied four YouTube employees with the subject line, "REPORT VIDEO: **ELECTION INTEGRITY CRISIS** Dirty Voter Rolls, Ballot Harvesting & Mail-in-Voting Risks!"  In the email, Jones wrote:

> Hi YouTube Reporting Team,
>
> I am reporting the following video because it misleads community members about elections or other civic processes and misrepresents the safety and security of mail-in ballots.  Thank you for your time and attention on this matter.
>
> All the best, Akilah.

21. At or about 11:16 a.m. (ET) on September 25, 2020, YouTube and/or Google representative Andrea Holtermann replied to Jones:

> Hi Akilah,
>
> Thanks for reaching out.  We will look into this and get back to you as soon as we can.

22. Later that same day, Plaintiff noticed that the video had been taken down.

23. On September 27, 2020, YouTube and/or Google's Holtermann confirmed to Jones that Plaintiff's video had been removed:

> Hi Akilah,
>
> Circling back on this. Thank you for raising this content to our attention, this has been removed from the platform for violating our policies. Please do not hesitate to reach out if there are any other questions or concerns you may have.

24.     On information and belief, OEC did not make a finding that Plaintiff's video "may suppress voter participation or cause confusion and disruption of the orderly and secure administration of elections" (Cal. Elec. Code § 10.5(b)(2)), nor would any such finding have been warranted or otherwise supported by evidence.

25.     Notably, the censored video is a portion of a longer video posted by Plaintiff on Plaintiff's YouTube channel that addressed issues in addition to election integrity.  The longer video, which OEC did not bring to YouTube's attention, remains available on Plaintiff's YouTube channel.

26.     By assessing Plaintiff's video to be misleading and causing the video to be removed from YouTube, OEC  injured Plaintiff's public education mission.  When Plaintiff's video was removed on September 25, 2022, it had only 5,531 views.  OEC's actions prevented Plaintiff from reaching tens of thousands of viewers with Plaintiff's message.

27.     In an email from OEC Senior Public Information Officer Jenna Dresner to CalMatters reporter Freddy Brewster, Dresner detailed the interconnected relationship between OEC and YouTube and other social media companies, stating, ". . . our priority is working closely with social media companies to be proactive so when there's a source of misinformation, we can contain it."  Dresner further explained:

> We have working relationships and dedicated pathways at each social media company.  When we receive a report of misinformation on a source where we don't have a pre-existing pathway to report, we find one. . . .  We worked closely and proactively with social media companies to keep misinformation from spreading, take down sources of misinformation as needed, and promote our accurate, official election information at every opportunity.

28.     On information and belief, OEC was acting under Section 10.5 of the California Election Code, which among other things purportedly requires it to "assess" and "mitigate" "false or misleading information regarding the electoral process" that "may suppress voter participation or cause confusion and disruption of

1    the orderly and secure administration of elections."   Cal. Elec. Code §§ 10.5(b)(2)

2    and (c)(8).

3        29.    Before purportedly assessing Plaintiff's video to be misleading and

4    causing the video to be removed from YouTube, OEC and perhaps other officials in

5    Defendant's office, had been monitoring Plaintiff's social media activity since at least

6    August 31, 2020, in part through a partisan public affairs and consulting firm

7    SKDKnickerbocker LLC ("SKDK").  During this time period, SKDK regularly sent

8    Dresser, Jones, and other OEC officials "Misinformation Daily Briefings."  SKDK

9    specialized in working for Democratic Party politicians and employed notable figures

10   like former Obama White House Communications Director Anita Dunn, and Hilary

11   Rosen.  In September 2020, the firm was advising the Biden campaign.

12       30.    On information and belief, OEC continues to assess and mitigate

13   citizens' allegedly false and misleading information, including Plaintiff's postings on

14   its YouTube channel and other social media activity.

15       31.    YouTube and other social media platforms remain an important means

16   for Plaintiff to communicate with followers and supporters and disseminate

17   information to the public in furtherance of its public education mission.  Plaintiff

18   intends to continue to maintain and post content on its YouTube channel and other

19   social media platforms for the foreseeable future, including content that comments on

20   and criticizes election procedures and actions of government officials that, in

21   Plaintiff's view, undermine election integrity.

## COUNT I

### (42 U.S.C. § 1983 – Violation of the 1st and 14th Amendments)

24       32.    Plaintiff realleges paragraphs 1 through 31 as if fully stated herein.

25       33.    Plaintiff enjoys the right to Freedom of Speech, as protected by the First

26   Amendment to the United States Constitution, which has been made applicable to the

27   States through the Fourteenth Amendment to the United States Constitution.

28

34.     Plaintiff was engaged in constitutionally protected speech when it posted its September 22, 2020 video on YouTube's video sharing platform.

35.     Defendant's actions against Plaintiff, including (i) Defendant's monitoring of Plaintiff's protected speech; (ii) erroneous if not knowingly false assessment that Plaintiff's speech was misleading or otherwise subject to regulation under Cal. Elec. Code §§ 10.5; and (iii) reporting Plaintiff's protected speech to YouTube with the expectation that YouTube would remove the speech from its video sharing platform would chill a person of ordinary firmness from continuing to engage in the protected speech.

36.     Plaintiff's protected speech was a substantial or motivating factor in Defendant's conduct.

37.     At all relevant times Defendant acted under color of law, including but not limited to Cal. Elec. Code §§ 10.5(b)(2) and (c)(8).

38.     Defendant's adverse action caused Plaintiff to suffer an injury, namely harm to Plaintiff's ability to carry out its public education mission.

39.     Plaintiff's injury is irreparable, and Plaintiff has no adequate remedy at law.

### COUNT II

### (42 U.S.C. § 1983 – Unconstitutional Regulation of Speech;
### 1st and 14th Amendments)

40.     Plaintiff realleges paragraphs 1 through 39 as if fully stated herein.

41.     Defendant's actions towards Plaintiff and application of Cal. Elec. Code § 10.5 to Plaintiff's protected speech constitute content-based and/or viewpoint-based regulation of Plaintiff's speech.

42.     Defendant's content-based and/or viewpoint-based regulation of Plaintiff's speech is presumptively unconstitutional and cannot satisfy strict scrutiny as it is not narrowly tailored to further a compelling government interest.

## COUNT III

**(Violation of the Free Speech Clause of the California Constitution**

**Cal. Const. art. I, §§ 2(a) and 3(a))**

43.    Plaintiff realleges paragraphs 1 through 42 as if fully stated herein.

44.    Defendant's conduct violated Plaintiff's rights under article I., sections 2(a) and 3(a) of the California Constitution.

45.    Defendant's actions entitle Plaintiff to equitable relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court (1) declare Defendant's actions to be unconstitutional; (2) permanently enjoin Defendant from violating Plaintiff's constitutional rights and/or unconstitutionally regulating Plaintiff's speech; (3) award Plaintiff costs of suit, including attorney's fees and costs under 42 U.S.C. § 1988 and all other applicable law; and (4) grant any and all further relief to which Plaintiff may be justly entitled.

September 23, 2022              Respectfully submitted,

                               JUDICIAL WATCH, INC.

                        By:    */s/ Robert Patrick Sticht.*
                               ROBERT PATRICK STICHT

                               Attorneys for Plaintiff

Name  Kathryn Blankenberg

Address  425 Third Street SW, Suite 800

City, State, Zip  Washington, DC 20024

Phone  (202) 646-5172

Fax  (202) 646-5199

E-Mail  kblankenberg@judicialwatch.org

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| JUDICIAL WATCH, INC., | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | 2:22-cv-06894-MEMF(JCx) |
| v. | |
| SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ Judicial Watch, Inc. _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  August 25, 2023 Order, Dckt. No. 29

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ____ August 25, 2023 ____. Entered on the docket in this action on __ August 29, 2023 __.

A copy of said judgment or order is attached hereto.

__ November 13, 2023 __

Date

*K Blankenberg*

Signature

☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                                      NOTICE OF APPEAL

**ER 56**

# EXHIBIT A

1

2                          UNITED STATES DISTRICT COURT

3                         CENTRAL DISTRICT OF CALIFORNIA

4                               WESTERN DIVISION

5

6    JUDICIAL WATCH, INC.,                    Case No.  2:22-cv-6894 MEMF(JCx)

            Plaintiff,
7                                             **ORDER GRANTING STIPULATION**
       v.                                     **FOR ENTRY OF JUDGMENT**
8
     SHIRLEY WEBER, in her official
9    capacity as Secretary of State of the
     State of California,
10
            Defendant.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ORDER

On August 17, 2023, Plaintiff Judicial Watch, Inc., and Defendant Shirley Weber, in her official capacity as Secretary of State of the State of California, filed a Stipulated Request for Entry of Judgment. ECF No. 28 ("Stipulation")

The stipulation requests that the Court enter judgment set forth in in a separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure following its order dated May 22, 2023 (ECF No. 26) granting the Secretary's Motion to Dismiss and dismissing all claims without leave to amend.

The Court, having considered the Stipulated Request for Entry of Judgment and finding good cause therefor, hereby GRANTS the stipulation and ORDERS the clerk to enter its judgment in this matter.

IT IS SO ORDERED.

DATED: August 25, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

## CERTIFICATE OF SERVICE

Case Name:      Judicial Watch, Inc. v. Shirley Weber

Case No.         2:22-cv-6894-MEMF(JCx)

I hereby certify that on November 13, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1.     NOTICE OF APPEAL

2.     REPRESENTATION STATEMENT

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 13, 2023, at Los Angeles, California.


*/s/ Robert Patrick Sticht.*
ROBERT PATRICK STICHT

**ER 60**

ACCO,(JCx),APPEAL,CLOSED,DISCOVERY,MANADR

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division – Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:22–cv–06894–MEMF–JC

Judicial Watch, Inc v. Shirley Weber
Assigned to: Judge Maame Ewusi–Mensah Frimpong
Referred to: Magistrate Judge Jacqueline Chooljian
Case in other court:  9th CCA, 23–03546
Cause: 42:1983 Civil Rights Act

Date Filed: 09/23/2022
Date Terminated: 05/22/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

| **Judicial Watch, Inc** | represented by | **Robert Patrick Sticht** |
|---|---|---|

represented by  **Robert Patrick Sticht**
Judicial Watch Inc
425 Third Street SW Suite 800
Washington, DC 20024
202–646–5172
Fax: 202–646–5199
Email: rsticht@judicialwatch.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Brooke Blankenberg**
Judicial Watch, Inc.
425 Third Street, SW Suite 800
Washington, DC 20024
202–646–5172
Fax: 202–646–5199
Email: kblankenberg@judicialwatch.org
*ATTORNEY TO BE NOTICED*

**Michael Bekesha**
Judicial Watch, Inc.
425 Third Street, SWi, Suite 800
Washington, DC 20024
202–646–5172
Fax: 202–646–5199
Email: mbekesha@judicialwatch.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Shirley Weber**
*in her official capacity as Secretary of*
*State of the State of California*

represented by  **Anna Theresa Ferrari**
CAAG – Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue Suite 11000
San Francisco, CA 94102–7004
415–510–3779
Fax: 415–703–1234
Email: anna.ferrari@doj.ca.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/23/2022 | 1 | COMPLAINT with filing fee previously paid ($402.00 paid on 9/23/2022, receipt number ACACDC–34040890), filed by PLAINTIFF Judicial Watch, Inc. (Attorney Robert Patrick Sticht added to party Judicial Watch, Inc(pty:pla))(Sticht, Robert) (Entered: 09/23/2022) |

| 09/23/2022 | 2 | CIVIL COVER SHEET filed by Plaintiff Judicial Watch, Inc. (Sticht, Robert) (Entered: 09/23/2022) |
|---|---|---|
| 09/23/2022 | 3 | *CERTIFICATION AND* NOTICE of Interested Parties filed by PLAINTIFF Judicial Watch, Inc, (Sticht, Robert) (Entered: 09/23/2022) |
| 09/26/2022 | 4 | NOTICE OF ASSIGNMENT to District Judge Maame Ewusi–Mensah Frimpong and Magistrate Judge Jacqueline Chooljian. (ghap) (Entered: 09/26/2022) |
| 09/26/2022 | 5 | NOTICE TO PARTIES OF COURT–DIRECTED ADR PROGRAM filed. (ghap) (Entered: 09/26/2022) |
| 09/26/2022 | 6 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (ghap) (Entered: 09/26/2022) |
| 09/29/2022 | 7 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Judicial Watch, Inc. (Sticht, Robert) (Entered: 09/29/2022) |
| 09/30/2022 | 8 | Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Shirley Weber. (yl) (Entered: 09/30/2022) |
| 10/06/2022 | 9 | CIVIL STANDING ORDER issued by Judge Maame Ewusi–Mensah Frimpong. (kd) (Entered: 10/06/2022) |
| 10/07/2022 | 10 | PROOF OF SERVICE Executed by Plaintiff Judicial Watch, Inc, upon Defendant Shirley Weber served on 10/7/2022, answer due 10/28/2022. Service of the Summons and Complaint were executed upon SHIRLEY WEBER, official capacity in compliance with Federal Rules of Civil Procedure by substituted service at business address and by also mailing a copy.Original Summons NOT returned. (Attachments: # 1 Exhibit A – Secretary of State, # 2 Exhibit B – Attorney General)(Sticht, Robert) (Entered: 10/07/2022) |
| 10/13/2022 | 11 | First NOTICE of Appearance filed by attorney Kathryn Brooke Blankenberg on behalf of Plaintiff Judicial Watch, Inc (Attorney Kathryn Brooke Blankenberg added to party Judicial Watch, Inc(pty:pla))(Blankenberg, Kathryn) (Entered: 10/13/2022) |
| 10/13/2022 | 12 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: Notice of Appearance 11 . The following error(s) was/were found: Incorrect event selected. Correct event to be used is: Notice of Appearance of Withdrawal of Counsel G123.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ak) (Entered: 10/13/2022) |
| 10/17/2022 | 13 | STIPULATION Extending Time to Answer the complaint as to Shirley Weber answer now due 11/18/2022, filed by Defendant Shirley Weber.(Attorney Anna Theresa Ferrari added to party Shirley Weber(pty:dft))(Ferrari, Anna) (Entered: 10/17/2022) |
| 11/18/2022 | 14 | NOTICE OF MOTION AND MOTION to Dismiss Complaint filed by defendant Shirley Weber. Motion set for hearing on 2/28/2023 at 10:00 AM before Judge Maame Ewusi–Mensah Frimpong. (Attachments: # 1 Declaration of Anna Ferrari, # 2 Request for Judicial Notice, # 3 Proposed Order) (Ferrari, Anna) (Entered: 11/18/2022) |
| 11/21/2022 | 15 | TEXT ONLY ENTRY by Judge Maame Ewusi–Mensah Frimpong: The Court, on its own motion, continues the Motion to Dismiss Complaint 14 from February 28, 2023 to March 2, 2023 at 10:00 a.m. IT IS SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (dbe) TEXT ONLY ENTRY (Entered: 11/21/2022) |
| 12/17/2022 | 16 | TEXT ONLY ENTRY by Judge Maame Ewusi–Mensah Frimpong. On the Court's own motion, the Motion to Dismiss Complaint 14 is continued to 05/11/2023 at 10:00 AM. Counsel shall take notice of this new date. IT IS SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 12/17/2022) |
| 02/06/2023 | 17 | STIPULATION to Reschedule /Establish Briefing Schedule on Motion to Dismiss filed by Defendant Shirley Weber. (Attachments: # 1 Proposed Order)(Ferrari, Anna) (Entered: 02/06/2023) |

| 02/27/2023 | 18 | ORDER GRANTING STIPULATION TO ESTABLISH BRIEFING SCHEDULE ON MOTION TO DISMISS [ECF NO. 17 ] by Judge Maame Ewusi–Mensah Frimpong. The Court, having considered the Parties Stipulation, and finding good cause therefor, hereby GRANTS the Stipulation IN PART and ORDERS as follows: Judicial Watchs opposition to the motion to dismiss shall be filed no later than March 23, 2023; and Any reply to the motion to dismiss shall be filed no later than April 20, 2023. IT IS SO ORDERED. (yl) (Entered: 03/01/2023) |
| --- | --- | --- |
| 03/23/2023 | 19 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Dismiss Complaint 14 *PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS* filed by Plaintiff Judicial Watch, Inc. (Attachments: # 1 Proposed Order)(Sticht, Robert) (Entered: 03/23/2023) |
| 04/20/2023 | 20 | REPLY NOTICE OF MOTION AND MOTION to Dismiss Complaint 14 filed by Defendant Shirley Weber. (Attachments: # 1 Declaration, # 2 Request for Judicial Notice)(Ferrari, Anna) (Entered: 04/20/2023) |
| 05/01/2023 | 21 | APPLICATION of Non–Resident Attorney Michael Bekesha to Appear Pro Hac Vice on behalf of Plaintiff Judicial Watch, Inc (Pro Hac Vice Fee – $500 Fee Paid, Receipt No. ACACDC–35234148) filed by Plaintiff Judicial Watch, Inc. (Attachments: # 1 Proposed Order) (Sticht, Robert) (Entered: 05/01/2023) |
| 05/04/2023 | 22 | ORDER by Judge Maame Ewusi–Mensah Frimpong: granting 21 Non–Resident Attorney Michael Bakesha APPLICATION to Appear Pro Hac Vice on behalf of Plaintiff Judicial Watch, designating Patrick Robert Sticht as local counsel. (yl) (Entered: 05/05/2023) |
| 05/08/2023 | 23 | TEXT ONLY ENTRY by Judge Maame Ewusi–Mensah Frimpong. The Court hereby advances the Motion to Dismiss Complaint filed by defendant Shirley Weber 14 to 05/10/2023 at 9:00 AM. Counsel shall take notice of this new date and time. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 05/08/2023) |
| 05/09/2023 | 24 | AMENDED TEXT ONLY ENTRY by Judge Maame Ewusi–Mensah Frimpong. Counsel shall disregard docket entry 23 as it was issued in error. The Motion to Dismiss Complaint filed by defendant Shirley Weber [14[ is set for to 05/11/2023 at 9:00 AM. Counsel shall take notice of this new date and time. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 05/09/2023) |
| 05/11/2023 | 25 | MINUTES OF Motion Hearing held before Judge Maame Ewusi–Mensah Frimpong. Arguments are made as to the Motion to Dismiss Complaint filed by defendant Shirley Weber 14 . The Court takes the matter under submission. A separate Court order shall issue. Court Reporter: Marea Woolrich. (rolm) (Entered: 05/18/2023) |
| 05/22/2023 | 26 | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 14 ] by Judge Maame Ewusi–Mensah Frimpong. For the reasons stated above, Secretary Webers Motion is GRANTED as to all claims. Judicial Watchs Complaint is dismissed without leave to amend pursuant to Rule 12(b)(6). Both the First and Second Requests for judicial notice are GRANTED. IT IS SO ORDERED. (See document for further details) (MD JS–6. Case Terminated) (yl) (Entered: 05/23/2023) |
| 06/08/2023 | 27 | TRANSCRIPT for proceedings held on 5/11/2023. Court Reporter: Marea Woolrich, e–mail: mareawoolrich@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 6/29/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/6/2023. (mwo) (Entered: 06/08/2023) |
| 08/17/2023 | 28 | STIPULATION for Judgment as to Dismissal filed by Plaintiff Judicial Watch, Inc. (Attachments: # 1 Proposed Order, # 2 Proposed Judgment)(Sticht, Robert) (Entered: 08/17/2023) |
| 08/25/2023 | 29 | ORDER GRANTING STIPULATION FOR ENTRY OF JUDGMENT by Judge Maame Ewusi–Mensah Frimpong, re Stipulation 28 : The Court, having considered the Stipulated Request for Entry of Judgment and finding good cause therefor, hereby GRANTS the stipulation and ORDERS the clerk to enter its judgment in this matter. |

**ER 63**

| | | (bm) (Entered: 08/29/2023) |
|---|---|---|
| 11/13/2023 | 30 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Judicial Watch, Inc. Appeal of Order, 29 . (Appeal Fee – $505 Fee Paid, Receipt No. ACACDC–36393896.) (Sticht, Robert) (Entered: 11/13/2023) |
| 11/13/2023 | 31 | REPRESENTATION STATEMENT re Notice of Appeal to 9th Circuit Court of Appeals 30 . (Sticht, Robert) (Entered: 11/13/2023) |
| 11/16/2023 | 32 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 23–3546 assigned to Notice of Appeal to 9th Circuit Court of Appeals 30 as to plaintiff Judicial Watch, Inc. (car) (Entered: 11/20/2023) |
| 11/20/2023 | 33 | DESIGNATION of Record on Appeal by Plaintiff Judicial Watch, Inc re 30 (Sticht, Robert) (Entered: 11/20/2023) |
| 02/02/2024 | 34 | JUDGMENT by Judge Maame Ewusi–Mensah Frimpong. Secretary Weber's motion to dismiss is GRANTED as to all claims. Judicial Watch's Complaint is dismissed without leave to amend pursuant to Rule 12(b)(6). Both the First and Second Requests for judicial notice are GRANTED. (See document for further details) 14 (yl) (Entered: 02/02/2024) |